Brian Mattison HOLLINGSWORTH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7343.

United States Court of Appeals Tenth Circuit.

Aug. 8, 1963.

**344**

Frank L. Beckwith, Westminster, Colo., for appellant.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., was with him on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Hollingsworth, having duly waived prosecution by indictment, was charged by information containing two counts with violation of 26 U.S.C.A. § 5851 and 15 U.S.C.A. § 902(e). The first count charged that Hollingsworth on July 15, 1962, in the Western District of Oklahoma, "did unlawfully possess a firearm, * * * to wit: a .303 caliber, * * * Rifle * * * with a stock sawed to a pistol grip only, with a barrel sawed-off to 8 inches in length, and with an overall length of less than 26 inches" on which "the making tax" of $200 imposed by 26 U.S.C.A. § 5821 had not been paid prior to the making of said firearm and that as to which no "written declaration of intention to make" had been filed prior to the making of said firearm, as required by 26 U.S.C.A. § 5821.

The second count charged that Hollingsworth, on July 15, 1962, in the Western District of Oklahoma, "having been convicted of a crime punishable by imprisonment for a term exceeding one year, did transport in interstate commerce from Fort Worth, Texas, to Oklahoma City, Oklahoma, a certain firearm, to wit: a .303 caliber * * * Rifle * * * with a stock sawed to a pistol grip only, with a barrel sawed-off to 8 inches in length, and with an overall length of less than 26 inches."

He was tried, convicted and sentenced on both counts and has appealed.

On July 15, 1962, Oklahoma City Police Officers Swindler and Smith, hereinafter referred to as the police officers, had received information that Hollingsworth had committed a burglary in Oklahoma City and went to an apartment above the Rose Glow, a private club, in Oklahoma City. They there found Hollingsworth lying across a bed. They asked him his name and if he was employed. He replied that he was not employed and he had not worked during the period of 10 days he had been in Oklahoma City. They then arrested him on a charge of vagrancy and took him to Lt. Mosshart's office in the Oklahoma City Police Station. They there questioned him during intervals aggregating about 45 minutes. They first questioned him about the burglary they had been informed he had committed in Oklahoma City. Shortly after the questioning started, he stated he was probably wanted in Fort Worth, Texas, due to the fact that he had been shooting pay telephone boxes. Thereupon, Lt. Mosshart talked by telephone with Sgt. Koons of the Fort Worth Police Department and was informed by the latter that the Fort Worth Police Department had been looking for Hollingsworth relative to the burglary of pay telephone coin boxes in which a sawed-off Enfield Rifle was used to blow off the locks. Koons informed Mosshart of the make, license number and color of an automobile in which they (referring to Hollingsworth, Hollis Gene Mooney and Donna Jean High) had been seen in Fort Worth and that they might have a gun in the automobile in Oklahoma City and requested Mosshart to check to see if they had the gun. The police officers then looked for the automobile and found it in the parking area around the Rose Glow private club. They searched the automobile and found a sawed-off Enfield Rifle wrapped in a work shirt in the turtle hull of the automobile and other articles not here material.

Hollingsworth, one Mooney, who was charged as a codefendant in the first

count of the information, and Donna Jean High had traveled from Fort Worth to Oklahoma City in the automobile. Hollingsworth had no interest in the automobile. It was owned either by High, or by High and Mooney.

After the search, the police officers returned to the police station and continued their questioning of Hollingsworth. They asked him to describe the gun he had used in shooting telephone coin boxes. He said it was a short sawed-off rifle. They made no inquiry relative to interstate transportation of the firearm, nor of any prior conviction of Hollingsworth of a crime punishable by imprisonment for a term exceeding one year. They then booked him, took his picture and his finger prints. It was not until then they advised Hollingsworth they had found the gun in the automobile and showed him the gun. Hollingsworth then stated "that was the gun that they had used." He further stated to the police officers that he had come to Oklahoma City to "round up some girls to work as prostitutes and pull a good 'heist' but it didn't come off." By "heist" he meant a large burglary.

On Monday morning, July 16, 1962, Robert E. Hinds, an investigator for the United States Treasury Department, went to the police station at Oklahoma City for a routine check. He was informed by Lt. Mosshart that Hollingsworth was being held on a vagrancy charge, but that Hinds might want to question him concerning a short rifle and Hinds was given the police report on Hollingsworth by Mosshart. The contents of the report do not appear in the record. Hinds testified that the information he received before he questioned Hollingsworth was not sufficient to form a basis for a federal charge; that he questioned Hollingsworth at the police station in the presence of Mosshart about 1:30 p. m., July 16; and that when he questioned Hollingsworth he was being held on a state and not a federal charge.

Before Hinds had questioned Hollingsworth, neither he nor the police officers nor Lt. Mosshart had any information

that Hollingsworth had not filed the declaration of intent to make or had not paid the tax, as charged in the first count of the information, or that Hollingsworth, before the transportation of the gun, had been convicted of a crime punishable by imprisonment for a term exceeding one year. They had cause to suspect only that Hollingsworth might have committed a federal offense. They had no knowledge of facts or information which they could have set forth in a complaint filed with the United States Commissioner, which would have afforded a sufficient basis upon which a finding of probable cause that a federal offense had been committed by Hollingsworth could have been made by the United States Commissioner.

The interrogation of Hollingsworth by Hinds was commenced at the questioning room in the men's jail on the third floor, but the day was hot and after a few minutes, at Mosshart's suggestion, they went down to his office, which was air conditioned. Before commencing the questioning Hinds introduced himself to Hollingsworth and explained he was an investigator for the Alcohol and Tobacco Tax Division of the United States Treasury Department and advised Hollingsworth that he had a constitutional right not to make any statement and that any statement he made would be used against him. Hinds made no threats, inducements or promises to Hollingsworth. Hinds first asked Hollingsworth if Brian Hollingsworth was his correct name and then asked him to go ahead and tell him everything generally. Hollingsworth, almost immediately after the questioning commenced and while they were still on the jail floor, told Hinds that he had been residing in Fort Worth, Texas, and while there had gone to a store in Fort Worth and purchased a .303 caliber British Rifle for the price of $18, in the name of James Braughn; that after such purchase he took the gun to his residence in Fort Worth and sawed off the stock and barrel of the gun. In the course of the questioning, which lasted about 45 minutes, Hollingsworth further told Hinds

that he had been convicted of aggravated assault at Miami, Florida, for which he had received two years' probation; that shortly after he acquired the gun and modified the stock and barrel he decided to come to Oklahoma City, and as Donna High had told him she was coming to Oklahoma City, he put the gun in the trunk of her car, caught a bus and came to Oklahoma City; that after a few days High and Mooney arrived in Oklahoma City and took the gun out of the car and later replaced it in the car. Hollingsworth further stated to Hinds that he was under indictment for a stolen money order, for possession of barbiturates, and for assault on an officer and armed robbery, but had not yet been tried for such offenses.

At the hearing on the motion to suppress, hereinafter referred to with more particularity, Hinds testified that after Hollingsworth had told him on the jail floor about his purchase of a .303 British Rifle in Fort Worth and his alteration of the rifle by sawing off the stock and barrel and after they had gone down to Mosshart's office he showed Hollingsworth the specific gun that had been seized by the police officers and Hollingsworth said it was his gun, that he had used it to blow locks on pay telephones, and in response to a question of how the gun "got here" he said "it had come up in the automobile from which it was removed."

Hinds was not authorized to file a complaint before a United States Commissioner charging Hollingsworth with a federal offense until he had received authority to do so from the United States Attorney. He obtained this authority in the morning of July 17, 1962. A complaint was filed with the United States Commissioner charging Hollingsworth with a federal offense. About 1:00 p. m., July 17, the city police released Hollingsworth to federal officers and thereupon he was taken before the Commissioner and the warrant issued on the complaint was served on him.

Counsel for Hollingsworth filed a motion to suppress the evidence obtained by the seizure, including the rifle seized by the city police, on the ground that the search and seizure was unreasonable and to suppress the evidence of the statements made by Hollingsworth to the city police and to Hinds on the ground that there was unnecessary delay before Hollingsworth was taken before the United States Commissioner.

A full hearing was had on the motion to suppress, prior to the trial. Hollingsworth did not testify at the hearing on the motion or at the trial. In support of his motion he offered only the testimony of Police Officer Swindler and Hinds. The Government offered the testimony of Lt. Mosshart. They testified to the facts above stated with respect to the arrest of Hollingsworth by the city police; the statements made by him to the city police in response to their questions; the information obtained by them from the Fort Worth police with respect to Hollingsworth and the automobile; the search of the automobile; the seizure of the firearm; the questioning of Hollingsworth by Hinds and the statements made by Hollingsworth to Hinds; and the time Hollingsworth was taken before the United States Commissioner.

At the hearing on the motion, no evidence was offered with respect to statements made by Hollingsworth to Albert Sayers, an investigator for the Federal Bureau of Investigation, hereinafter set out, nor was any reference made thereto.

The trial court sustained the motion with respect to the evidence obtained through the search and seizure and overruled it with respect to the statements made by Hollingsworth to Hinds, prior to the time he was taken before the United States Commissioner.

The Oklahoma City police officers did not testify at the trial. No evidence was introduced as to their actions with respect to Hollingsworth, the statements made by him to them in response to their questions, the information with respect to Hollingsworth and the automobile, given to them by the Fort Worth police officer, and their search of the automobile and seizure of the gun. The gun itself was

not introduced in evidence. Likewise, there was no evidence introduced at the trial of the fact that Hinds showed the gun that had been seized by the city police to Hollingsworth, nor of the questions Hinds asked him with respect to that particular gun, nor of the statements made by Hollingsworth in answer to such questions.

Only Donna Jean High, Hinds and Sayers testified as witnesses for the Government at the trial. High testified to the following facts: She is a waitress and a prostitute. She had known Hollingsworth for about two years and Mooney about one year before the trial; she saw them in Fort Worth in the latter part of June or about the first of July, 1962; they were then living in the same apartment with her; Hollingsworth brought a long rifle to the apartment; the next time she saw the rifle was when they were packing their effects in a 1953 Mercury automobile which belonged to her and Mooney; "the barrel and the end" of the gun had been sawed off; the sawed-off barrel was about eight or nine inches long; Hollingsworth wrapped the gun in a shirt and put it in the car; after completing the packing of the car, she, Hollingsworth and Mooney left Fort Worth in the automobile and traveled in it to Oklahoma City.

Hinds testified at the trial to the statements made by Hollingsworth to him when he questioned him at the police station, but, as stated above, he omitted any reference to the fact that he showed the gun which had been seized by the police officers to Hollingsworth, or to the specific questions he asked Hollingsworth with respect to such gun at that time or the answers Hollingsworth made to such questions.

Albert Sayers, an investigator for the Federal Bureau of Investigation, testified at the trial that he had a conversation with Hollingsworth on July 17, 1962; that he first advised Hollingsworth that he was not required to make any statement, that any statement he made could be used against him in a court of law and that he had a right to an attorney; that before questioning Hollingsworth he had received information that a girl had come to Oklahoma City from Fort Worth with Hollingsworth and that she had been working as a prostitute in Oklahoma City and that he was investigating relative to a possible violation of the Mann Act (18 U.S.C.A. § 2421); that he talked to the girl, Donna Jean High, before he questioned Hollingsworth; that in answer to his questions Hollingsworth stated he had come to Oklahoma City from Fort Worth, Texas, with Mooney and a girl in her car; that he had made a deal with the girl in Fort Worth; and that he further said, "The only whore I have taken interstate is this sawed-off Enfield rifle, and I brought her so she could turn tricks for me by shooting telephones." Counsel for Hollingsworth undertook to show on cross-examination of Sayers that the latter questioned Hollingsworth before he was taken before the United States Commissioner, but failed to do so. He made no further effort in that regard.

Sayers was not making any investigation with respect to the offenses charged in the information. He was solely concerned with a violation of the Mann Act. Hollingsworth's statement about the rifle was an attempted explanation of why he, Donna Jean High and Mooney came to Oklahoma City from Fort Worth. It was an exculpatory statement to refute any violation of the Mann Act.

Sayers concluded there had not been any Mann Act violation.

After a demurrer to the Government's evidence had been overruled, Hollingsworth, through his counsel, announced that he rested, without offering any evidence. Thereupon, Hollingsworth moved the court to withdraw from the consideration of the jury the evidence offered by the witnesses Hinds and Sayers on the ground that they were extrajudicial admissions and were taken during a period of unnecessary delay in taking him before the United States Commissioner. There was no contention at the hearing on the motion to suppress or at the trial that the statements made by Hollingsworth to the city police, to Hinds and to

Sayers were not entirely voluntary, nor that they were in anywise tainted by the search and seizure.

The Government introduced in evidence a written statement of Thomas H. Coon, an officer having custody and control of the National Firearms Registration & Transfer Record, containing the registration of firearms, as required by the National Firearms Act, stating that after diligent search no record or entry was found to exist in the records of his office of a declaration of intent to make the rifle described in the first count of the information and an accompanying certification by a duly authorized official having official duties where such record was kept, attested by his signature and authenticated by the seal of his office, all of which fully met the requirements of Rule 44 of the Federal Rules of Civil Procedure, made applicable in criminal proceedings by Rule 27 of the Federal Rules of Criminal Procedure.

The Government also introduced in evidence a copy of the Judgment of Conviction of Hollingsworth of aggravated assault in the Criminal Court of Record of Dade County, Florida, on October 29, 1959, after counsel for Hollingsworth had stipulated that it was a true copy of such judgment, as it appeared in the official records of such court.

I

*The Claim of "Unnecessary Delay"*

■ The motion to suppress the evidence of statements and admissions made by Hollingsworth to Hinds was predicated solely on the claim of unnecessary delay in taking Hollingsworth before the United States Commissioner. That part of the motion read:

"This defendant further moves the Court for an Order suppressing as evidence against him the statement extracted from him prior to the time he was taken before the United States Commissioner on the ground that there was unnecessary delay * * * which afforded the Government the opportunity to extract a confession."

Likewise, the motion to strike the testimony of Hinds with respect thereto was predicated solely on the ground the statements and admissions were made during a period of unnecessary delay in taking Hollingsworth before a United States Commissioner.

It is true that counsel for Hollingsworth urged at the hearing on the motion to suppress that the arrest of Hollingsworth was illegal, but they did so solely as a basis for the contention that the search of the automobile was not an incident to a lawful arrest. At no time in the court below did counsel for Hollingsworth contend that the statements and admissions made by Hollingsworth to the police officers and to Hinds were not freely and voluntarily made.

■ Neither the city police nor Hinds had any knowledge or information of an essential element charged in the second count of the information, namely, that Hollingsworth, prior to the transportation of the firearm, had been convicted of a crime punishable by imprisonment for a term exceeding one year, until Hollingsworth stated to Hinds he had been so convicted during the interrogation of Hollingsworth by Hinds about 1:30 p. m., July 16, 1962. At no time before Hollingsworth was taken before the United States Commissioner did the city police or Hinds have any knowledge or information, either of the failure to pay the federal tax on the firearm or the failure to file the intention to make the firearm, elements of the offense charged in the first count of the indictment, one of which had to be proved. (See 26 U.S.C.A. §§ 5821 and 5851.) Hence, Hinds could not have filed a complaint before a United States Commissioner setting forth facts or information which would have afforded a sufficient basis for a finding of probable cause to believe a federal offense had been committed by Hollingsworth, required by Criminal Rules 3 and 4(a) as construed in Giordenello v. United States, 357 U.S. 480, 485, 78 S.Ct. 1245, 2 L.Ed.2d 1503. A warrant not setting forth such facts or information would have been invalid. See Giordenel-

lo v. United States, supra, 484, 487, 78 S.Ct. 1249, 1250. It follows that Hinds could not have lawfully taken Hollingsworth before a United States Commissioner, either by arrest without a warrant or by arrest under a Commissioner's warrant, prior to the time he questioned him on July 16, 1962. If there was unnecessary delay, it occurred after Hollingsworth had made the statements and admissions to Hinds in response to the latter's questioning at about 1:30 p. m., July 16, 1962. Such subsequent delay was not for the purpose of questioning Hollingsworth and inducing him to make or extracting from him incriminating statements and admissions; it in nowise prejudiced Hollingsworth with respect to his interrogation by Hinds and the statements and admissions he made to Hinds; and it bore no relationship whatever to the previous statements and admissions made by Hollingsworth in response to the questions of Hinds.[1]

█ Counsel for Hollingsworth further contend that the period he was in custody of the city should be considered as federal custody. We think the evidence clearly refutes this contention.

The record clearly shows that the city police officers went to the Rose Glow private club to contact Hollingsworth, because they had information from a source that theretofore had been reliable that Hollingsworth had committed a burglary in Oklahoma City in violation of state law; that they had found Hollingsworth in an apartment above the Rose Glow private club and he told them he was unemployed and had not worked during the period of 10 days that he had been in Oklahoma City; that they then arrested him on a charge of vagrancy and took him to the city jail and began questioning him with respect to the burglary; that he disclosed to them that he had been shooting telephone coin boxes with a rifle in Fort Worth, Texas, and was probably wanted by the Fort Worth police; that Lt. Mosshart then contacted Sgt. Koons of the Fort Worth Police Department and was informed by him that Hollingsworth, Mooney and High had been shooting telephone coin boxes with a sawed-off Enfield Rifle in Fort Worth and were wanted by the Fort Worth Police Department. Koons further advised him of the make, license number, and color of the automobile in which they traveled, stated that they might have the rifle in their possession in Oklahoma City and asked him to make a check to ascertain if they had the rifle.

Burglary and shooting telephone boxes were, of course, state offenses in Oklahoma and Texas. It is indubitable from this record that the action of the Oklahoma City police in arresting Hollingsworth, in holding him in city custody, in questioning him and in searching the automobile had to do solely with state offenses in Texas and in Oklahoma; that the search of the automobile was made at the request of the Fort Worth police; that after the search was completed and Hollingsworth was further questioned, the Oklahoma City police booked, mugged and fingerprinted him either for a state or city offense (the record does not disclose which); and that the Oklahoma City police were at no time concerned with the possible commission of a federal offense by Hollingsworth, were not undertaking to obtain evidence of a federal offense and were not acting for or in behalf of federal officers. It is significant that they made no inquiry of Hollingsworth relative to interstate transportation of the firearm or with respect to a prior conviction. The only thing they did was to permit Hinds to see the police report and to question Hollingsworth at the police station.

---

1. See: United States v. Mitchell, 322 U.S. 65, 69–71, 64 S.Ct. 896, 88 L.Ed. 1140; Upshaw v. United States, 335 U.S. 410, 413, 69 S.Ct. 170, 93 L.Ed. 100; Trilling v. United States, 104 U.S.App.D.C. 159, 260 F.2d 677; Perry v. United States, 102 U.S.App.D.C. 315, 253 F.2d 337, c.d. 356 U.S. 941, 78 S.Ct. 785, 2 L.Ed.2d 816; Feguer v. United States, 8 Cir., 302 F.2d 214, 250–252, c.d. 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110.

We conclude that the city officers in arresting Hollingsworth, retaining him in custody, questioning him and searching the automobile were concerned only with state offenses and were not acting for or in behalf of federal officers, pursuant to any working arrangement between the city and federal officers, or otherwise, and that the period Hollingsworth remained in city custody should not be regarded as federal custody.[2]

██ The record does not show that the interrogation of Hollingsworth by Sayers took place before Hollingsworth was taken before the Commissioner. Moreover, the investigation being carried on by Sayers was with respect to a possible violation of the Mann Act and had nothing to do with the offenses of which Hollingsworth was charged in the information. The record wholly fails to show that Sayers made any inquiry of Hollingsworth with respect to his alteration of the gun or the transportation thereof. Hollingsworth's statement with respect thereto, as hereinbefore set out, was made in an effort to refute any claimed violation of the Mann Act, and was an exculpatory statement. In our opinion, it was in nowise induced or brought about by the delay in taking Hollingsworth before the Commissioner on a charge of a federal offense under the Firearms Act. Moreover, it was received in evidence without any objection on the part of counsel for Hollingsworth and was challenged for the first time by a motion to strike, made after both the Government and Hollingsworth had rested their cases.[3] It was not raised by the

motion to suppress or at the hearing thereon. It should have been raised before the trial, or good reason for the failure to do so shown.[4] It was merely cumulative and added little to the evidence already introduced by the Government. Under such circumstances, we are of the opinion its admission affords no ground for reversal.

## II

### *The Arrest by the City Police Officers*

██ It was not contended below, nor asserted in this court, that the statements made by Hollingsworth to Hinds were not voluntary. However, it is here urged that they were tainted by the asserted unlawful arrest of Hollingsworth by the city police. The fact that a confession was obtained from a person during his custody under an unlawful arrest does not ipso facto make it involuntary and inadmissible, but the fact that a confession was obtained during such custody and the attendant circumstances should be considered in determining whether the confession was voluntary, but voluntariness still remains as the test of admissibility. In Brinegar v. United States, 10 Cir., 165 F.2d 512, 515, aff. 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, this court said:

> " 'The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process.' Neither will the fact that the arrest, under which the person was taken into custody, was illegal, in and of itself render a confession or

2. Papworth v. United States, 5 Cir., 256 F.2d 125, 128, c.d. 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 88, rehearing denied, 358 U.S. 914, 79 S.Ct. 239, 3 L.Ed.2d 235; United States v. Coppola, 2 Cir., 281 F.2d 340, 342–345, aff. 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79. Cf. Anderson v. United States, 318 U.S. 350, 356, 63 S.Ct. 599, 87 L.Ed. 829; Brown v. United States, 5 Cir., 228 F.2d 286, 289, c.d. 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500, rehearing den. 352 U.S. 861, 77 S. Ct. 27, 1 L.Ed.2d 71; Carpenter v. United States, 4 Cir., 264 F.2d 565, 571, c.d.

360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548.

3. See: O'Dell v. United States, 10 Cir., 251 F.2d 704, 707–708; Wood v. United States, 10 Cir., 317 F.2d 736.

4. Dunn v. United States, 10 Cir., 98 F. 2d 119, 120; Garhart v. United States, 10 Cir., 157 F.2d 777, 779; Segurola v. United States, 275 U.S. 106, 111, 48 S.Ct. 77, 72 L.Ed. 186; Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307.

an incriminating statement involuntary. The test is whether, under all the facts and circumstances, the confession or incriminating statement was voluntarily made."[5]

In Wong Sun v. United States, 371 U.S. 471, 485, 486, 83 S.Ct. 407, 9 L.Ed.2d 441, the officers followed Toy into his bedroom and almost immediately handcuffed and arrested him. The Supreme Court held that the invasion and arrest were unlawful and that under the circumstances it was unreasonable to infer that Toy's statement was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." But the arrest in the instant case, the attendant circumstances, and what followed are in nowise comparable with the facts in Wong Sun.

A careful examination of the record leads us to the conclusion that Hollingsworth was a person who gloried in publicizing his criminal exploits—one of a not uncommon type of criminals—and that he not only talked freely to the police officers and Hinds and Sayers, but also volunteered incriminating information with respect to which he had not been interrogated.

### III

*The Search of the Automobile*

The trial court held that the search was unreasonable and suppressed the evidence of facts secured by the search and seizure, including the firearm found in the automobile and seized by the police officers.

When the police officers located the automobile, which they were able to identify from information given them by Sgt. Koons, because of that information and other information given them by Sgt. Koons and the facts that had been freely stated to them by Hollingsworth, we think they had probable cause to search the automobile. The "facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution" to believe that an offense had been committed.[6] Hence, if the search was unreasonable, it was because it was made without a search warrant. The police officers no doubt were actuated by the fact that Mooney and High were at large and if they learned of Hollingsworth's arrest they would quite likely move the automobile and dispose of the firearm. However, the trial court determined the search was unreasonable and we shall assume its determination was correct.

■ As stated above, the motion to suppress the evidence of the incriminating statements made by Hollingsworth and the motion to strike the evidence of Hinds and Sayers introduced at the trial was solely on the ground of the asserted unnecessary delay in taking Hollingsworth before the United States Commissioner. However, counsel for Hollingsworth in this court contend that the evidence given by Hinds and Sayers was tainted by the unlawful search and seizure and was therefore inadmissible.

A sufficient answer is that the objection here made for the first time should have been raised by timely steps taken in the trial court.[7]

■ However, had the claim of taint by the search and seizure been duly raised in the trial court, we are of the opinion it would have been without merit.

5. See: Smith v. United States, 103 U.S. App.D.C. 48, 254 F.2d 751, 758, c.d. 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552; United States v. Walker, 2 Cir., 197 F.2d 287, 289, c.d. 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679.

6. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543; Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327.

7. Nardone v. United States, 308 U.S. 338, 341, 40 S.Ct. 182, 64 L.Ed. 319 and cases cited in Note 4, supra; United States v. Sheba Bracelets, 2 Cir., 248 F.2d 134, 142, 143, c.d. 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed.2d 259; Segurola v. United States, 275 U.S. 106, 111, 112, 48 S.Ct. 77, 72 L.Ed. 186; Garhart v. United States, 10 Cir., 157 F.2d 777, 779; O'Dell v. United States, 10 Cir., 251 F.2d 704, 708.

■ Evidence obtained by an unlawful search and seizure may not be used by the Government in a court proceeding or otherwise. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319. But as the late Mr. Justice Holmes stated in his opinion in that case, "Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, * * *." [8]

Not only was the evidence obtained by the search and seizure suppressed and not used, but no evidence was introduced by the Government of the questions propounded by the police officers and by Hinds in their respective interrogations of Hollingsworth nor of the answers thereto, made by him with respect to the specific gun seized in the search of the automobile. And before such questions were asked by the police officers they already had knowledge from statements freely made by Hollingsworth to them that he had been shooting pay telephone coin boxes with a short sawed-off rifle and from information furnished by Sgt. Koons that Hollingsworth was wanted in Fort Worth for shooting such coin boxes with a sawed-off Enfield Rifle. And before Hinds showed Hollingsworth the rifle seized in the search and questioned him with respect to that specific rifle, Hollingsworth had already told him that he purchased a .303 caliber British Rifle in Fort Worth, took it to his residence in that city and remade it by sawing off the stock and barrel.

Proof of the transportation of the particular rifle, which Hollingsworth told Hinds he purchased and altered by sawing off the barrel and stock in Fort Worth and later caused to be transported from Fort Worth to Oklahoma City was made at the trial by Hinds's testimony of Hollingsworth's statements to him and by High's testimony set out above.

Thus, it will be seen that there was independent evidence that Hollingsworth purchased the rifle, made it, within the meaning of § 5821, supra, by cutting off the stock and barrel and transported it from Fort Worth to Oklahoma City and that none of such independent evidence was in anywise tainted by the search of the automobile and the seizure of the particular firearm found therein. Hence, such independent evidence was properly admitted at the trial.[9]

The steady increase in the number of serious crimes throughout the United States is a matter of grave concern. Of course, the constitutional rights of the individual should be protected. But in our zeal to safeguard those rights, we must not be unmindful of the public interest involved and we should not erect any unnecessary barriers that will thwart the law enforcement officers in the performance of their duties to investigate, detect and secure evidence of crime.

IV

*Proof of Nonregistration of Firearm*

■ The contention that the document offered in proof of the failure of Hollingsworth to file a written declaration of an intention to make a firearm was improperly admitted, because not authenticated by a proper certificate, is without merit. The document, which is a part of the original record in this court, shows that it in all respects complied with the requirements of Rule 44 of the Federal Rules of Civil Procedure, made applicable in criminal cases by Criminal Rule 27.

We find no grounds for reversal and the judgment is accordingly affirmed.

8. See also: Nardone v. United States, 308 U.S. 338, 341, 342, 60 S.Ct. 266, 84 L.Ed. 307; Somer v. United States, 2 Cir., 138 F.2d 790, 791; United States v. Sheba Bracelets, 2 Cir., 248 F.2d 134, 141, 142, c.d. 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed. 2d 259.

9. See cases cited in Note 8, supra.