Argued June 4, affirmed September 5, 1968

# STATE OF OREGON, *Respondent, v.*
## ROBERT S. WRIGHT,
### *Appellant.*
444 P. 2d 912

*Gary D. Babcock*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*Jacob B. Tanzer*, Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The defendant Robert S. Wright was convicted of the crime of illegal possession of narcotics, and appeals.

On November 25, 1966, officers of the Portland police obtained a search warrant for the defendant's room in the Kent Hotel. The search was for parking meter keys that purportedly were used for robbing the city's parking meters. The officers searched the room and found therein a capsule containing a powdery substance, also a syringe and the usual equipment of narcotic users. Officer Johnson thereupon conducted a field test and discovered the capsule contained heroin. He then advised the defendant he was under arrest, and under direct examination Johnson stated:

> "I told him he had the right to remain silent, anything he might say could be held against him in a court of law. I told him he had the right to an attorney and if he did not have funds for one, the Court would provide one for him; that if he wished to talk to us, he was in charge of the interview. He could stop whenever he wanted and that an attorney could be present at that time."

The police officer then asked defendant if he understood this warning and the defendant answered: "I've heard this all before." The officer with the capsule in his hand then asked defendant: "Bob is this any good?" and defendant replied: "It's flea powder." The record discloses that "flea powder" is a term used by heroin users to describe that drug after it has been highly diluted.

The trial court, out of the presence of the jury, heard the evidence relative to warnings given and the statement made by the defendant. The trial court found that defendant was fully advised of his constitutional rights and that his statement was voluntary.

Defendant assigns as error the trial court's admitting into evidence the statement of defendant made to the officer. He argues that to constitute a valid waiver of his right to counsel, before being interrogated he must affirmatively state "I waive my rights to counsel at this time," or words to that effect.

Defendant relies upon the following from *Miranda v. Arizona*, 384 US 436, 475, 86 S Ct 1602, 16 L ed 2d 694, 724:

> "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 US 506, 516, 8 L ed 2d 70, 77, 82 S Ct 884 (1962), is applicable here:

> " 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and

understandingly rejected the offer. Anything less is not waiver.' "

Just prior to the language in *Miranda* above quoted, the court stated:

> "This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 US 458, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), and we re-assert these standards as applied to in-custody interrogation." 384 US at 475, 16 L ed 2d at 724.

It then is appropriate for us to examine *Johnson v. Zerbst*, 304 US 458, 464, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357, 362:

> "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

■ Thus, while the court in *Miranda* set forth the obvious example that an express statement of waiver would constitute a valid waiver, it seems clear that the court in referring to *Johnson v. Zerbst,* supra, and in using the statement found in *Carnley v. Cochran,* 369 US 506, 516, 82 S Ct 884, 8 L ed 2d 70, 77, (1962): "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer," was not limiting the question of a valid waiver to a formalistic "express statement" by the accused, but to what the record as made in the trial court discloses as to waiver.

■ The fundamental purpose of *Miranda,* as we un-

derstand it, is not to hamper the police in their duties at the investigatory stage of a committed crime, but to insure that a person accused of crime has knowledge of his right not to speak in the absence of counsel. See *State v. Matt*, 251 Or 134, 444 P2d 914, on this 5th day of September, 1968, decided.

■ The evidence in this case discloses, after the proper warnings were given and the defendant was asked if he understood, that he stated "I have heard all this before." At the hearing before the trial judge he stated positively that he knew he didn't have to answer any questions of the officers and was "reasonably aware" that he could see an attorney before he talked to the police if he wanted. There is a total absence of any evidence of any coercive circumstances existing which would cast doubt upon the voluntariness of the defendant's waiver.

Finding no error in the record and that the defendant was afforded a fair trial, the judgment is affirmed.