Argued April 30, affirmed July 9, petition for rehearing denied
August 4, petition for review denied October 13, 1970

# STATE OF OREGON, *Respondent, v.* ANDREW MORRIS WOODS, JR., *Appellant.*

471 P2d 850

*Kenneth C. Hadley, Jr.,* Deputy Public Defender, Salem, argued the cause for appellant. With him on

the brief was Gary D. Babcock, Public Defender, Salem.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendant was convicted of burglary not in a dwelling and was sentenced to four years' imprisonment.

The Pendleton Body Shop in Pendleton, where defendant was a former employe, was in the same building as Ron Baldwin's automotive dealership. The two businesses were separated by a wall containing a number of windows. During the night of November 10, 1968, defendant entered the body shop, opened a window and went into the Ron Baldwin premises where he stole cash and checks from the safe. As a result of questioning by the police officer, defendant gave two statements, one incriminating in nature and the other a confession. Defendant appeals, claiming his constitutional rights were violated in obtaining the statement and confession.

Pendleton police officer Corporal Barry Clift went to defendant's girl friend's house on November 20, 1968, and contacted defendant there. He told defendant that he would like to talk to him down at the office. Officer Clift told him he was not under arrest and that if he did come it would be on a voluntary basis. He asked if defendant would go to the office

and defendant said he would. In response to defendant's question Officer Clift told him he would be able to return to his girl friend's house. They went in Officer Clift's patrol car. This was about 10 a.m. Officer Clift testified that he orally warned defendant of his constitutional rights when they got into the car and started down to the station, but defendant says that he doesn't recall being given any oral warnings in the car. They had some general conversation but did not discuss the burglary on the trip to the station. Officer Clift testified that defendant was under no restraint and if he had said to stop the car he could have left. Officer Clift did not recall telling defendant he could leave at any time, although he had told him he was not under arrest and was going to the station voluntarily.

Upon arrival at the station, they went to the interview room in the basement. Defendant was again told that he wasn't going to be arrested and that he was going to be able to go back to his girl friend's house. When they were in the interview room Officer Clift warned defendant of his rights by reading from a rights notification form. The warning began: "Since you, Andrew Morris Woods, Jr., are not under arrest and not in custody in the matter of burglary not in a dwelling * * *." Defendant testified that he was told he would have to remain at the station until he told his story. Officer Clift denied telling defendant that he wasn't leaving the interview room until he gave a complete statement on the Ron Baldwin theft. However, he said the following:

> "At one point Mr. Woods said—He was about halfway through the statement I believe. He asked if he could go to his girlfriend's to eat lunch, and I told him I would appreciate it if he finished the

statement, I would order his lunch and buy his lunch for him. He said, 'Never mind. I will finish this and then go to my girlfriend's and eat.' "

They were in the interview room approximately two and one-half hours. Defendant advised Officer Clift that he had to go to work at noon. The officer called defendant's employer prior to noon because he "knew he [defendant] wouldn't be there at noon." When defendant wanted a drink of water, he and Officer Clift both went upstairs to the public drinking fountain and got a drink, and then returned to the interview room. After giving his statement defendant was returned to his girl friend's house, and was told by Officer Clift that Clift was going to the district attorney's office to see if he could get a warrant for defendant's arrest.

■ Defendant claims his initial contact with Officer Clift was in fact an arrest which was illegal for lack of probable cause, and therefore his statements were inadmissible because tainted with the illegality of the arrest.

The trial court found there was no arrest at this point. The record supports his finding, *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), and we agree. See *Hicks v. United States*, 382 F2d 158 (DC Cir 1967).

■ The court found that defendant here was given adequate *Miranda*[①] warnings before giving his statements. If, in fact, there had been an actual arrest and that arrest had been without probable cause, it would not necessarily have followed that defendant's statements were inadmissible. The question would then become whether the giving of the *Miranda* advice could be insulation against an arrest assumed to be without

---

[①] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

probable cause. Were the statements "sufficiently an act of free will to purge the primary taint of the unlawful invasion"? *Wong Sun v. United States*, 371 US 471, 486, 83 S Ct 407, 9 L Ed 2d 441 (1963). See also *State v. Jones*, 248 Or 428, 435 P2d 317 (1967).

In *United States v. Close*, 349 F2d 841 (4th Cir 1965), cert den 382 US 992, 86 S Ct 573, 15 L Ed 2d 479 (1966), where the defendant claimed an initial illegal arrest, the court said:

"* * * Assuming, arguendo, that the initial arrest by the Roanoke police was illegal, we construe Wong Sun as holding, in effect, that not all oral statements are the fruit of the 'poisonous tree' simply because they would not have been made but for the illegal actions of the police. We think the Court in Wong Sun, clearly indicates the view that a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible. As we read the decisions of certain other courts, we conclude that they have so interpreted the Court's indicated view in Wong Sun. See: Rogers v. United States, 330 F.2d 535 (5th Cir. 1964); Burke v. United States, 328 F.2d 399 (1 Cir. 1964); Hollingsworth v. United States, 321 F.2d 342 (10 Cir. 1963). There is abundant evidence to support the Government's contention that all statements made by Harold during any and all of his conversations with the police and the F.B.I. agents were voluntarily given, free of coercion, and with full knowledge of his rights. Thus we find no error in permitting evidence of these statements to be presented to the jury." 349 F2d at 851.

The *Close* case was cited with approval in *United States v. Horton*, 416 F2d 1052 (4th Cir 1969).

There is adequate evidence here that the state-

ments given were voluntary, free of coercion and with full knowledge by defendant of his rights.

The court made a specific finding that defendant was given adequate *Miranda* warnings. In his initial contact with defendant, before any questioning, Officer Clift advised him as follows:

> "* * * When we got in the car and started down to the station I just advised him that he had the right to remain silent, anything he said could— 'Anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney. If you cannot afford an attorney one will be afforded you by the court.' "

Defendant was also advised before questioning:

> " '* * * You have the right to remain silent and not answer questions until you have consulted with an attorney.' "

Defendant claims this did not adequately inform him that he had a right to have an attorney *present* during interrogation. In *State v. Lowry*, 245 Or 565, 423 P2d 172 (1967), one of the warnings was:

> "* * * 'Next, you are entitled to consult a lawyer. Do you understand that?' Defendant answered, 'Yes, sir.' * * *" 245 Or at 566.

The Supreme Court held:

> "We believe that the manner in which defendant was informed adequately apprised him of his right to counsel prior to and during interrogation." 245 Or at 566-67.

Also, in the present case the defendant indicated during the *in camera* hearing that he understood his rights:

> "Q * * * Do you recall Corporal Clift advising you you had a right to remain silent?
> "A Yes.

"Q Did you know what that meant? What did this mean to you?

"A That I didn't have to say nothing until I had an attorney.

"Q And you knew then that you were entitled to an attorney?

"A Yes."

The record supports the trial court's finding of an adequate warning.

■ Defendant also now claims there was no affirmative waiver of his rights. Defendant did not expressly say that he waived his rights, but the record shows that immediately after the rendition of advice defendant spoke freely and voluntarily to the officer. This type of conduct has repeatedly been held to be a sufficient waiver. *State v. Davidson,* 252 Or 617, 620-21, 451 P2d 481 (1969); *State v. Matt,* 251 Or 134, 136-37, 444 P2d 914 (1968); *State v. Wright,* 251 Or 121, 123-25, 444 P2d 912 (1968); *State v. Brammeier,* 1 Or App 612, 617-19, 464 P2d 717 Sup Ct *review denied* (1970). See also *State v. Capitan,* 2 Or App 338, 341-42, 468 P2d 533 (1970).

There was evidence of sufficient historical facts to support the ruling of the court admitting the statement and confession in evidence, and we find no justification for defendant's claim that he was treated unfairly or not in accordance with the requirements of due process. *Ball v. Gladden,* supra.

Affirmed.