**UNITED STATES of America**

**v.**

**Gene Eric BRYANT and James Montgomery Humphrey.**

**Crim. No. 73–251.**

United States District Court,
W. D. Pennsylvania.

Feb. 19, 1974.

pursuant to an invalid search warrant; (2) that the subsequent seizure of a second pair of plaid pants and his oral confession were tainted by, and the fruit of, the 'first illegal seizure; (3) that, in any event, defendant was coerced and did not consent to the seizure of the second pair of pants; and (4) that he was undergoing severe narcotic withdrawal pains at the time of his confession so as to render it involuntary. Upon due consideration of the evidence adduced at the evidentiary hearing and the briefs of counsel, we have concluded that defendant's motion should be granted in part and denied in part.

The following are the operative facts adduced at the evidentiary hearing held in this case:

At approximately 2:15 A.M. on September 11, 1973, Detective Hanlon, Detective King and Detective Trosky of the Pittsburgh Police Department went to the defendant's residence at 617 Durango Way, Pittsburgh, Pennsylvania, and, pursuant to an arrest warrant charging defendant with an unrelated armed robbery,[1] placed the defendant under arrest. The defendant was sleeping immediately prior to his arrest, and in the process of aiding the defendant in getting dressed, Detective Trosky noticed a pair of plaid pants hanging on the back of a door in defendant's room. Detective Trosky read the defendant the required "Miranda" warnings before transporting him to the Public Safety Building in Pittsburgh.

Subsequently, Detective Trosky viewed a bank surveillance camera photograph (GX 1) in which a suspected robber was wearing a pair of plaid pants similar to those he had seen in the defendant's bedroom. At approximately 9:00 A.M. on September 11, 1973, Detective Trosky brought this fact to the attention of Detective Foley, who was reporting for duty on the morning shift, and Detective Foley went to City Magis-

David B. Atkins, Samuel J. Orr, III, Asst. U. S. Attys., Pittsburgh, Pa., for plaintiff.

William E. Stockey, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

MARSH, Chief Judge.

The defendant, Gene Eric Bryant, charged in a two-count indictment with bank robbery (18 U.S.C. § 2113(a)), putting lives in jeopardy (18 U.S.C. § 2113(d)), and aiding and abetting these crimes (18 U.S.C. § 2), has moved to suppress certain physical evidence and oral statements allegedly obtained in violation of his constitutional rights. Defendant's contentions appear to be fourfold: (1) that a certain pair of plaid pants were seized from his residence

---

1. The validity of this arrest warrant (GX 7) has not been challenged by the defendant. The detectives were apparently acting in good faith in executing it. *Cf.* Wilson v. United States, 117 U.S.App.D.C. 28, 325 F. 2d 224 (1963).

trate Chapas and was issued a search warrant for 617 Durango Way. This search warrant (GX 2) contains no sworn facts sufficient to establish probable cause for its issuance, and Detective Foley does not remember if he orally or by supplemental affidavit related any sworn facts to the magistrate before the warrant was issued. Armed with this search warrant Detective Foley, Detective Wach and Detective James went to the defendant's residence and seized a pair of plaid pants (GX 3) hanging on a door in defendant's bedroom.

At approximately 11:30 A.M. on September 11, 1973, Detective Fabus went to the defendant's cell in the Public Safety Building, read the defendant the required "Miranda" warnings, had the defendant read and sign a standard waiver of rights form (GX 4), and informed the defendant that he would return after lunch to question him. After lunch Detective Fabus and Detective Spizarsky took the defendant to an interview room in the Public Safety Building. The pants seized pursuant to the search warrant earlier that morning were in the room and seen by the defendant. The defendant was confronted with the bank surveillance camera photograph and asked if he "recognized anyone" in the picture. [Tr. p. 59] shortly after the interview began the defendant admitted his participation in the bank robbery and agreed to help the detectives "in every way he possibly could." [Tr. p. 42] He informed the detectives that the pants seized that morning were not the ones he was wearing when the surveillance photograph was taken, and volunteered to take them to his residence to retrieve the correct pair of plaid pants and possibly a gun.

At approximately 2:00 P.M. on September 11, 1973, Detective Fabus, Detective Spizarsky, and the defendant went to 617 Durango Way to get the correct pants. At the defendant's residence the three were confronted by the defendant's sister, Kim, who was apparently indignant at her brother's arrest. The defendant informed his sister that there

was "no trouble", and at defendant's request she produced a pair of plaid pants (GX 5) which the defendant in turn gave to the detectives. The detectives and the defendant returned to the Public Safety Building with the pants and at approximately 4:00 P.M. defendant made an oral statement detailing his involvement in the bank robbery to the police which was electronically recorded.

After his arrest, no promises or threats were made to the defendant except that he was told that his recorded confession would be played and the fact that he had co-operated brought to the court's attention. The defendant did state that he had been high on drugs the night before his arrest (September 10, 1973), but specifically denied that he was under the influence of drugs or undergoing narcotic withdrawal when interrogated by Detective Fabus and Detective Spizarsky. Detective Fabus, who had one year's experience on the narcotics squad, noticed no narcotic withdrawal symptoms in defendant and he appeared to be well-orientated, and in good physical condition during the interrogation. The defendant did not complain to any officials of the jail that he was undergoing withdrawal, and his sister, who observed him on the day he confessed, was not called to corroborate his hearing testimony that he was undergoing severe withdrawal pains the afternoon he confessed. We find as a fact that defendant was not suffering from narcotic withdrawal during his interview on September 11, 1973.

■ Based on the above facts it appears that the seizure of the first pair of pants by Detective Foley, Detective Wach, and Detective James was pursuant to a search warrant that was not based upon a finding of probable cause by a neutral and detached magistrate. The search warrant is totally silent insofar as a factual basis for a finding of probable cause is concerned, and apparently no information other than what is contained within the four corners of the warrant was brought to the magistrate's attention. Accordingly, the seizure of

the first pair of plaid pants was illegal and these pants cannot be used as evidence at defendant's pending trial. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

■ But, contrary to the defendant's contention, we do not believe that the seizure of the second pair of plaid pants or defendant's confession were the fruits of the illegal seizure of the first pair of plaid pants. The defendant, who testified in his own behalf at the suppression hearing, did not attach any controlling significance to being confronted with the first pair of pants, and it would appear that the main reason for his co-operation with the detectives was the bank surveillance photograph. The pants the police originally had at the interrogation were not evidence of the crime, and defendant knew this. At best, the pants did no more than to provide the defendant an opportunity to demonstrate to the police his willingness to cooperate. Defendant had been warned of his "Miranda" rights twice before he produced the second pair of pants or made any incriminating admissions, and he voluntarily and intelligently waived his rights. We find that this defendant's co-operation with the police was not the product of being confronted with the illegally seized pants, which, in fact, had nothing to do with the crime under investigation; but rather, that the defendant would have co-operated upon being confronted with the surveillance photograph even if the illegally seized pants had not been in the possession of the police. We find that the illegally seized pants did not cause or motivate the defendant to co-operate with the police, and that his co-operation was not involuntary or the product of the prior illegal search. *Cf.* United States v. Evans, 454 F.2d 813 (8th Cir. 1972); Hollingsworth v. United States, 321 F.2d 342 (10th Cir. 1963).

■ Furthermore, the production and seizure of the second pair of plaid pants appears to have been with the defendant's consent and active participation. There was no evidence that the detectives coerced or even solicited defendant's production of the correct pants. The idea of going to his house for the correct pants originated with defendant, and, once there, he took an active role in procuring the pants from the custody of his reluctant sister and turning them over to the detectives. To the extent that the production of the second pair of pants can be categorized a search and seizure, we find that the defendant voluntarily [2] consented to such search; accordingly, a search warrant was not required, and the second pair of pants would be admissible at his trial if relevant. *Cf.* United States v. Myers, 378 F.2d 398 (3rd Cir. 1967); United States v. Torres, 354 F.2d 633 (7th Cir. 1966); Drummond v. United States, 350 F.2d 983, 988 (8th Cir. 1965); Hubbard v. Tinsley, 350 F.2d 397 (10th Cir. 1965).

■ Finally, defendant's contention that he was undergoing narcotic withdrawal at the time of his interrogation is simply not supported by the believable evidence adduced at the hearing. At the time of his interrogation he specifically denied that he was either under the influence of narcotics or withdrawing from the use of narcotics, his contrary testimony at the evidentiary hearing simply is not believable in light of the other evidence recited *supra.*

We find that upon being confronted with the bank surveillance photograph the defendant knowingly and voluntarily co-operated with the police; that defendant's co-operation was untainted by improper coercion, promises or threats on the part of the police; that defendant's co-operation was not motivated by, or the product of, being confronted with the illegally seized pants; and that before defendant co-operated with the police he was twice warned of his constitutional rights and effectively and intelligently waived those rights.

An appropriate order will be entered.

2. We are aware that the Supreme Court has recently held that consent to a search can be voluntary even if there is no proof that the person consenting knew that he had a right to refuse. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).