UNITED STATES of America
v.
Bobby Eugene KING.
Crim. No. SA70CR108.

United States District Court,
W. D. Texas,
San Antonio Division.

Nov. 17, 1970.

On Motion for Reduction of Bond
Dec. 22, 1970.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Wayne Speck, Asst. U. S. Atty., for plaintiff.

H. M. Bellinger, San Antonio, Tex., for defendant.

SPEARS, Chief Judge.

On the 11th day of November, 1970, came on for consideration the defendant's motion to suppress any evidence involving the identification of the defendant by two women employees of Alamo Savings and Loan Association, hereinafter referred to as "Association", on the ground that an improper picture spread was utilized by federal agents in securing the identification.

The defendant is charged with robbing the Association. He was described by the witnesses as, among other things, a negro with light complexion. On the day following the robbery each of the two witnesses was shown the photographs of six negroes, one of whom was the defendant, but neither witness was able to identify the defendant as the man they had seen rob the Association. About two days thereafter, the same employees were shown six entirely

different photographs, and the defendant's photograph, which was one of the six exhibited to each witness, was identified as that of the robber. However, the face and head of the defendant in the second series of six photographs was two and one-half times larger than the face and head of any other person in the same series; the defendant's complexion appeared to be lighter than that of any other person represented by the photographs, and the photographs of all persons in the same series, except that of the defendant, were mug shots.

There would appear to have been no valid reason for the federal agents to resort to photographic identification in this case. The defendant had already been identified by name by a personal acquaintance who recognized him running from the Association's office at the time of the robbery, and observed that he matched the description of the robber. More than sufficient evidence, therefore, was present to constitute probable cause for defendant's arrest, without the corroboration of the two employees. Any further identification of defendant by the two Association employees, or anyone else, could easily have been from a line-up conducted according to law. (See United States v. Wade, 388 U.S. 218, 236–237, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), wherein the Supreme Court characterized the line-up as a "critical stage of the prosecution.") As a consequence, this case does not present a situation where it was essential for the federal agents to swiftly determine whether they were on the right track. Their investigation had already focussed on the defendant, so they knew who they were looking for. But even if some swift corroboration had been considered necessary or advisable as a part of the investigative process, it does seem that the agents would have followed the admonition of the Supreme Court in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and allowed only one of the two witnesses to view the photographs, with the second witness being afforded the opportunity of observing the defendant in a line-up, "thus permitting the photographic identification to be supplemented by a corporeal identification, which is normally more accurate." See footnote 6, 390 U.S. at 386, 88 S.Ct. at 972.

It is interesting to note that when one of the said witnesses was subpoenaed to testify at a removal hearing in Denver, Colorado, the defendant was handcuffed when he was exhibited to her for the first time in the courtroom. Obviously, there was no line-up used. Significant also is the fact that when the defendant was later shown to the second witness at a line-up conducted in San Antonio, with the defendant's attorney present, the wrong person was identified as the defendant.

The case of United States v. Sutherland, 5 Cir., 428 F.2d 1152 (1970), is strikingly similar to the instant case. It was tried by this Court and reversed by the Court of Appeals because the jury was not instructed to disregard entirely the in-Court identification of the defendant therein by two bank employees. Instead the question was allowed to go to the jury. Although this Court did not intend to hold as a matter of law that the photographic identification procedure utilized in that case was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, the Court of Appeals construed the Court's description of what was done to constitute such a holding. Since this Court has described the procedure used in the instant case in virtually the same terms, it considers itself bound to entirely remove the issue of an in-Court identification from the jury. Considering, therefore, the totality of the circumstances in light of *Sutherland*, defendant's motion to suppress any evidence involving the identification of the defendant by the said two witnesses must be, and it is hereby, granted.

■ The government contends that the eyewitness identification of the defend-

ant should be admissible—notwithstanding the photographic identification procedure—because of the Omnibus Crime Control and Safe Streets Act of 1968 (Title 18 U.S.C. Section 3502). Section 3502 reads in full as follows:

The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under Article III of the Constitution of the United States.

In *Sutherland* the Court of Appeals refused to pass upon the applicability or validity of Section 3502, because the question was raised for the first time on a petition for rehearing. When, after remand, the issue was later presented to this Court, it had already been established by the Court of Appeals that the procedural safeguards set forth in *Simmons* had not been satisfied, and since Section 3502 does not contain effective alternative safeguards, it was felt that to apply the statute indiscriminately, without giving consideration to the requirements of *Simmons,* would result in an irreconcilable conflict with the Constitution as construed by the Supreme Court. Consequently, this Court refused to literally apply Section 3502 to the *Sutherland* case. And although Title 18 U.S.C. Section 3731 afforded the government the right to appeal the decision in *Sutherland,* and the second trial of that case was delayed for a sufficient period of time to allow the Solicitor-General to study and consider the matter, no appeal was taken. So insofar as the Appellate Courts are concerned, this troublesome problem is still up in the air.

The same reasoning employed in *Sutherland* applies to this Court's refusal to apply Section 3502 in the instant case. At the request of government counsel, the trial of this case has also been delayed in order to give the Solicitor-General an opportunity to again study the matter. It remains to be seen whether or not an appeal will be taken.

## ON MOTION FOR REDUCTION OF BOND

On the 22nd Day of December, 1970, a hearing was held on defendant's motion to reduce his $25,000 surety appearance bond to a personal recognizance bond in the amount of $5,000, which certain of his named relatives have expressed a willingness to sign. In the meantime, the Solicitor-General has indicated that no appeal will be filed from this Court's order granting the defendant's motion to suppress any evidence involving the identification of the defendant by two women employees of the Alamo Savings and Loan Association.

It appears that the robbery of the Alamo Savings and Loan Association was at gun point, and an eye witness, to whom the defendant is personally known, has identified the defendant as the one he saw running from the office of the Association at the time of the robbery. In addition, the defendant answers the description of the robber as given by employees of the Association before they had seen the picture spread. After the robbery was committed, the defendant left San Antonio for La Junta, Colorado, where he learned that he was wanted by the F.B.I.; whereupon, he left La Junta, but apparently soon had second thoughts and turned himself in.

While the bond should probably be reduced to some extent, this Court is of the opinion that one in the amount of at least $10,000 is necessary to assure defendant's presence in Court. Besides, the public interest, which is also entitled to this Court's consideration, will be served by the defendant's detention, in the absence of an adequate bond to assure his presence in Court. See Title 18 U.S.C. Section 3146, including the purpose clause set forth under the historical note.

The motion for release of the defendant on a personal recognizance bond in the sum of $5,000 is denied, but the amount of the bond is reduced to $10,-000, provided it is signed by the defendant's said relatives, as well as by one or more qualified sureties.