Murrah, Circuit Judge, dissented and filed opinion and voted to grant a rehearing.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bobby Lee DAVIS, Defendant-Appellant. No. 71-1437.**

United States Court of Appeals, Tenth Circuit.

March 17, 1972.

Rehearing Denied April 14, 1972.

Richard J. Smith, U. S. Atty., Albuquerque, N. M. (Mark B. Thompson, III, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

William H. Carpenter, Albuquerque, N. M., for appellant.

Before MURRAH, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Bobby Lee Davis was convicted by a jury of interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312. On appeal he alleges that the trial court erred in: (1) the admission into evidence of his oral confession given to F.B.I. Agent John Feeney; (2) improper jury selection; and (3) denial of a fair trial as a result of a discussion between a witness and a juror, and another discussion between the prosecutor and a witness near a juror.

On March 23, 1971, Davis was driving a car on a highway near Santa Rosa, New Mexico, when he was stopped by patrolman Mike Lujan, a New Mexico state officer, for a routine driver's license and registration check. Upon inspection following the stop, Officer Lujan determined that the tires on the Davis vehicle were badly worn. Lujan also observed that there was no key in the ignition. He then obtained from Davis the vehicle serial number and, as a routine matter, he radioed this serial number for a National Crime Informa-

tion Center check. While Officer Lujan was completing the traffic citation charging Davis with operating a motor vehicle with defective equipment, he received a radio response that the N.C.I.C. check had disclosed that the car operated by Davis had been stolen from Wichita, Kansas. Lujan presented the traffic citation to Davis, who signed it. Lujan then took Davis into Santa Rosa where Davis appeared before a magistrate on the traffic citation. Davis entered a not guilty plea. The magistrate set his bond at $200.00 and ordered trial within two or three days. Nothing in this record indicates that Officer Lujan arrested Davis for possession of a stolen vehicle. He testified that it was his customary practice to take highway safety violators, including tourists, directly before a magistrate whenever feasible.

Prior to the 1968 amendments, the New Mexico statutes provided that a person convicted of operating a motor vehicle in an unsafe condition [N.M. Stat.Ann. § 64–20–1 (1953)] was subject to a fine of not more than $100.00 or imprisonment not to exceed 10 days for a first conviction. N.M.Stat.Ann. § 64–22–4 (1953). The 1968 amendment to the last cited statute established a "penalty assessment" of $10.00 for operating a vehicle with improper equipment. Furthermore, other amendments provide that a person arrested for a penalty assessment misdemeanor is given an option to: (1) request immediate appearance before an available magistrate having jurisdiction [N.M.Stat.Ann. § 64–22–7 (Supp. 1971)]; or (2) sign an agreement on a copy of the citation to pay the penalty assessment and be released from custody. N.M.Stat.Ann. § 64–22–4.1 (Supp. 1971). Davis was not informed by Officer Lujan of these provisions. He did not request an immediate appearance before a magistrate. We conclude that nothing in the New Mexico statutes justified Davis' detention in custody on the traffic violation charged. Officer Lujan testified that these statutes were "new"

and that the procedure he followed with Davis is the same he had followed in many other cases.

The day following Davis' arrest, Officer Lujan phoned F.B.I. Agent John Feeney. He related the N.C.I.C. report on the car. Feeney came to Santa Rosa promptly to investigate. He questioned Davis at the jail house after fully informing him of his Miranda rights. Davis orally confessed to Feeney. Davis was thereafter arrested by Feeney and released from state custody. He was promptly taken by Agent Feeney before a United States Commissioner where he was arraigned.

Davis contends that his confession was tainted by reason of the illegal state arrest. He relies primarily upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). He does not contend that his confession, per se, was involuntary.

This court, in Hollingsworth v. United States, 321 F.2d 342 (10th Cir. 1963) interpreted *Wong Sun, supra,* directly contrary to Davis' contention here. In that case the defendant was unlawfully arrested by city police officers on a vagrancy charge. While the defendant was thus illegally detained in the custody of city officers, he was interrogated by federal officers. This court found, from the record, that the defendant's confession was given voluntarily and that "voluntariness still remains as the test of admissibility." In Brinegar v. United States, 165 F.2d 512 (10th Cir. 1947), aff'd 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), we said:

" 'The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process.' Neither will the fact that the arrest, under which the person was taken into custody, was illegal, in and of itself render a confession or an incriminating statement involuntary. The test is whether, under all of the facts and circumstances, the confession or incriminating statement was voluntarily made." 165 F.2d at 515.

Accord: United States v. Close, 349 F. 2d 841 (4th Cir. 1965), cert. denied 382 U.S. 992, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966); Collins v. Beto, 348 F.2d 823 (5th Cir. 1965); Burke v. United States, 328 F.2d 399 (1st Cir. 1964), cert. denied 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52 (1964); Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958).

There are decisions from other jurisdictions upholding Davis' interpretation of *Wong Sun, supra.* They hold that *Wong Sun* stands for the rule that any "in custody" incriminating statement made to police following an unlawful arrest and detention is tainted and inadmissible. United States v. Burhannon, 388 F.2d 961 (7th Cir. 1968); United States v. Klapholz, 230 F.2d 494 (2nd Cir. 1956), cert. denied 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956); United States v. Coleman, 322 F.Supp. 550. (E. D.Pa.1971).

Our holdings in *Hollingsworth* and *Brinegar* have recent and substantial support. Congress enacted 18 U.S.C. § 3501(a) as part of the Omnibus Crime and Control and Safe Streets Act of 1968, P.L. 90–351. The first sentence of that section provides that:

*"In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given."* (Emphasis ours).

This broad rule governing admissibility of confessions is followed by certain specific factors to be considered by the trial judge in relation to "all the circumstances surrounding the giving of the confession". The specific relevant factors to be considered involve criteria laid down under McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1943), Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957), Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The statute expressly provides

that the presence or absence of any of these factors "need not be conclusive on the issue of voluntariness of the confession". 18 U.S.C. § 3501(b).

■ The United States Supreme Court has not ruled on the constitutionality of these provisions. We note, however, that in a recent opinion authored by Mr. Justice White, Lego v. Twomey, Warden, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), 18 U.S.C. § 3501(a) was quoted in footnote 14. While found to be inapplicable to the state proceeding there under consideration, its provisions were nevertheless deemed "relevant to note". See also Sheer v. United States, 414 F.2d 122 (5th Cir. 1969), cert. denied, 396 U.S. 946, 90 S.Ct. 387, 24 L. Ed.2d 249 (1969). The rule laid down in *Lego, supra,* interpretive of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), is that when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clearcut determination that the confession was in fact voluntarily given. Proof must be by a preponderance of the evidence, and not beyond a reasonable doubt.

■ Nothing in the record before us here indicates other than that Davis voluntarily, knowingly and intelligently confessed to F.B.I. Agent Feeney. He chose to speak after being fully informed of his constitutional rights. There is no evidence of any "working arrangement" between state and federal officers, and no collusion is indicated.[1] Voluntariness, under these circumstances, is the sole constitutional requisite governing admission in evidence of Davis' confession. Davis' confession was the "unfettered exercise of his own will". Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Voluntariness is a sufficient constitutional criterion for the admissibility of confessions, providing that the commands of Yarbrough v. United States, 309 F.2d 936 (10th Cir. 1962) are met. There this court said:

"The law is well settled that a criminal conviction cannot be sustained when the offense is proven solely by the uncorroborated extra-judicial confession or admissions of the accused. It is necessary that such extra-judicial statements establishing essential elements of the crime charged be corroborated by evidence independent of the confession or admissions. The prosecution, in addition to the confession or admissions, must produce substantial independent evidence of the essential elements of the crime charged which will tend to establish the trustworthiness of the statements made by the accused." 309 F.2d at 937–938.

■ During noon recess of the trial, Officer Lujan was seated outside the courtroom in anticipation of being called as a witness in the afternoon session. One of the jurors in the case approached him and asked Lujan whether he was acquainted with a relative of the juror, who had no connection with the Davis case. Lujan acknowledged his acquaintance. Nothing more was said. Later, the Assistant United States Attorney prosecuting the case approached Lujan and discussed some of the testimony

---

1. In United States v. Chadwick, 415 F.2d 167 (10th Cir. 1969), Chief Judge Murrah observed that the mandates of Rule 5(a), Fed.R.Crim.P. requiring arraignment without unnecessary delay, are not violated by reason of interviews conducted by federal officers with persons in state custody and that confessions given during such interviews are generally admissible if otherwise constitutionally procured, provided that the interviews and resulting confessions are not in pursuance of a collusive "working arrangement" between state and federal officers designed to permit federal officers to obtain a confession before arraignment in violation of Rule 5. And in Butterwood v. United States, 365 F.2d 380 (10th Cir. 1966), cert. denied 386 U.S. 937, 87 S.Ct. 960, 17 L.Ed.2d 810 (1967), we said that a bare suspicion of such a "working arrangement" does not justify a finding of collusion.

which Lujan was to give. A juror was seated only three or four feet away during this discussion. Davis alleges prejudicial error. He cites cases in his argument which are distinguishable on the facts. The short conversation between the juror and witness Lujan did not in anywise pertain to the case. The other conversations, between the Assistant United States Attorney and witness Lujan, took place several feet away from the juror. This juror was questioned in chambers. He testified that he did not hear any of this conversation. No prejudice is shown. The contacts with the jurors in this case did not harm Davis. Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

■ Davis alleges improper jury selection procedures. He complains that the jury venire members were "leftovers" from another trial. There was another case being tried to a jury at the same time as the Davis trial. Those excused from jury duty at the other trial were directed to report to the courtroom where Davis' trial was to be heard. Davis contends that this procedure is not in accord with 28 U.S.C. § 1864. He cites no authorities in support of his contention and he does not demonstrate any prejudice. Davis was provided a lawful panel from which the jury was selected. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948).

Affirmed.

MURRAH, Circuit Judge (dissenting):

I agree that a confession obtained during an unlawful detention is not by that fact alone made involuntary or inadmissible. But I must reject the view apparently adopted by the majority that voluntariness is the sole test of admissibility under such circumstances. The effect of this opinion is to cut down the poisonous tree doctrine. I am opposed to it and accordingly dissent.

The majority finds support for its view in the interpretation of *Wong Sun* in Hollingsworth v. United States, 321 F.2d 342, 350 (10th Cir. 1963). Despite the language in *Hollingsworth* quoted and relied upon by the majority, I am unable to find anything in *Wong Sun* to support the proposition that voluntariness is the sole test of admissibility. The critical language in *Wong Sun* simply states: " . . . the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. 471, 488, 83 S.Ct. 407, 417.

I interpret this language to say unequivocally that evidence obtained by exploitation of an illegal arrest or detention is inadmissible, even though voluntarily confessed. This is undoubtedly the law of the land generally.[1] The poisonous tree doctrine was conceived by Justice Holmes in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), annunciated by Justice Frankfurter in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), and clearly defined by Justice Brennan in *Wong Sun*. I do not believe we are quite ready or willing to repudiate those cases or the constitutional principles upon which they are based.

The majority's reliance upon Brinegar v. United States, 165 F.2d 512 (10th Cir. 1947), aff'd, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), is misplaced.

1. See, e. g., Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969) ; Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) ; Allen v. Cupp, 426 F.2d 756, 759 (9th Cir. 1970) ; Phelper v. Decker, 401 F.2d 232, 237 (5th Cir. 1968) ; Collins v. Beto, 348 F.2d 823, 827–828 (5th Cir. 1965) (opinion of Tuttle, C. J.) ; People v. Bilderbach, 62 Cal. 757, 44 Cal. Rptr. 313, 401 P.2d 921, 927 (1965) ; State v. Traub, 151 Conn. 246, 196 A.2d 755, 757 (1963), cert. denied, 377 U.S. 960, 84 S.Ct. 1637, 12 L.Ed.2d 503 ; State v. Barwick, 94 Idaho 139, 483 P.2d 670, 673 (1971).

That case was concerned only with the issue of voluntariness, not with the admissibility of an admittedly voluntary statement.

Furthermore, the provisions of 18 U. S.C. § 3501 do not support *Hollingsworth* in the manner asserted by the majority opinion. *Wong Sun* held that evidence tainted by violations of Fourth Amendment rights is constitutionally inadmissible. Imperatives based on constitutional principles cannot, of course, be subverted by mere legislation. Both the legislative history of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, and cases construing the statute indicate clearly that it does not and, moreover, could not sanction the admission of statements obtained in violation of constitutional prohibitions. See Senate Report No. 1097, 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2123–2150; United States v. King, 321 F. Supp. 614, 617 (W.D.Tex.1970); United States v. Tarlowski, 305 F.Supp. 112, 123 (E.D.N.Y.1969); United States v. Schipani, 289 F.Supp. 43, 59–60 (E.D. N.Y.1968), aff'd, 2 Cir., 414 F.2d 1262, cert. denied, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102.

It is agreed that Davis' detention was unlawful. To me it is plain that this unlawful *police action was for the sole purpose of securing evidence on the subsequent Dyer Act charge. The resulting confession was, thus, "come at by exploitation" of the unlawful detention, and unquestionably fruit of the poisonous tree, regardless of the voluntariness with which it was given.* For this Court to conclude that Davis' detention was completely unjustified on the one hand, and, at the same time, admit evidence which was the target and goal of that unlawful detention has the effect of "legitimatizing the conduct which produced the evidence" and making the Court "party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968).