UNITED STATES of America, Plaintiff-Appellee,

v.

Gary LEPINSKI, Defendant-Appellant.

No. 552–70.

United States Court of Appeals, Tenth Circuit.

May 12, 1972.

Victor R. Ortega, U. S. Atty., and John A. Babington, Asst. U. S. Atty., Albuquerque, N. M., on brief, for plaintiff-appellee.

James W. Creamer, Jr., of Flowers & Creamer, Denver, Colo., on brief, for defendant-appellant.

Before PHILLIPS, HILL and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal follows convictions of transportation in interstate commerce of a firearm by one previously convicted of a felony, 18 U.S.C. §§ 922(g) and 924(a), and under the Dyer Act, 18 U. S.C. § 2312. Appellant Lepinski raises three issues, arguing (1) that the arrest of appellant and his companion was without probable cause and unlawful, requiring exclusion of proof obtained as the result of an unlawful arrest; (2) that there was a working arrangement between Federal and State officers so that Rule 5(a), F.R.Crim.P., applied to the State officer, and that in violation of the Rule appellant was not brought before a magistrate without unnecessary delay, making his subsequent confession inadmissible; (3) that the court erred in refusing to suppress evidence, consisting of the vehicle identification number, recovered by a warrantless search.

The trial court conducted an omnibus hearing where a motion to suppress under Rule 41(e), Fed.R.Crim.P., and other matters were considered. The court entered an order finding, among other things, that there was no illegal arrest of appellant by the New Mexico police officers; that there was no delayed arraignment; that there was no illegal search of the automobile in which the pistol, premising the firearms convic-

tion, was located; that appellant's constitutional rights under the *Miranda* case were explained prior to taking of appellant's statement by the F.B.I. agent; and that the statement given by appellant to the agent was voluntarily and knowingly made by appellant. On these findings the trial court denied the motion to suppress and another motion, not here relevant. Insofar as these findings are concerned we must consider whether there was substantial support for them in the evidence and its reasonable inferences. Gilbert v. United States, 163 F.2d 325 (10th Cir.). In this connection there was proof tending to show the following facts.

On Saturday, March 21, 1970, while appellant was driving, he and one Gary Tamminen were stopped by Officer Poncho in Grants, New Mexico, for a routine check of driver's license and vehicle registration. Appellant Lepinski produced a driver's license bearing the name Roger Dean Buss, and his companion, Tamminen, said it was his car and that he had a bill of sale procured when he bought the car about two months earlier.[1] Tamminen had no bill of sale or other proof of ownership and Officer Poncho asked them to wait there while they called in about the car, or to come down to the station for the vehicle to be checked out. They went to the station and the testimony does not indicate any objection to this by Lepinski or Tamminen.

The exact sequence of events becomes hazy at this point, but in essence these were the events that followed. During the lunch hour both men were placed in a jail cell and apparently were kept there while an investigation was carried on that afternoon. A National Crime Information Center report was negative on the car. Several long distance calls were made. Tamminen told Officer Poncho that his brother was with him when the vehicle was purchased about two months earlier, but during a call to

him the brother said he had not seen Tamminen for about six months. Later a woman, identifying herself as a Mrs. Davenport, called from Minneapolis saying she had sold Tamminen the " '67 Pontiac." When asked if her husband had sold the car to Tamminen, she replied instead that she had sold it to him. Tamminen later said he had bought it from Gene Davenport and that the wife was not present when the purchase was made.

Apparently it was at about this time that Officer Poncho arrested Tamminen for improper use of registration and arrested Lepinski as a party to the same offense. 64 N.M.S.A., 1953, §§ 64–10–2 and 64–22–5. The Officer said that under the State law, as long as they didn't have any registration, he had to hold them until he could find out whether the vehicle was stolen. About an hour later the Officer contacted the F.B.I.

Officer Poncho obtained the vehicle identification number from a plate on the fire wall on the driver's side of the car and the number of the Alabama license plate on the car. This was relayed to Alabama and the report was that the license plate did not match the serial number. This discrepancy had been reported in the conversation with the F.B.I. agent, related above, and he was asked to come on over.

That Saturday afternoon efforts were made to contact the Justice of the Peace, but she lived out of town and was not then available in Grants. The men were held in jail until the following Monday. Officer Poncho testified that Mrs. Tamminen called on Sunday, claiming the car was hers. He said this voice was the same as the Mrs. Davenport with whom he had talked on Saturday. When the lady was questioned as to why Alabama plates were on the car, she hung up. Mr. Tamminen explained this by saying he and his wife had had an argument and he changed the plates because

---

1. Lepinski testified that Tamminen told the officer that in Minnesota the only time a registration document is kept in the ve-

hicle is for a truck. The owner keeps the original of a car registration, most of the time at home.

he did not want her to know where he was going.

Special Agent Walton of the F.B.I. arrived in Grants Monday morning. He gave the *Miranda* warnings to Lepinski and Tamminen, who signed waivers of rights. Lepinski signed his waiver of rights form at 10:34 a. m. After this Lepinski was questioned and admitted he was not Roger Dean Buss. He signed a written statement at 11:16 a. m. saying that Tamminen had asked him before they left Minnesota whether they should take a .32 caliber pistol along; that Lepinski had said it was a good idea; that the pistol had then been placed in the glove compartment of the Pontiac which Lepinski was driving when they were arrested; and that he had been previously convicted of burglary and a Dyer Act offense. The statement does not cover ownership of the gun, but Officer Poncho testified that Lepinski claimed the weapon which was in the vehicle.

Mrs. Tamminen was again contacted later on Monday and asked whether she would consent to a search of the 1967 Pontiac, which she refused. Officer Poncho obtained a search warrant, whose validity is not questioned, and recovered a .32 caliber pistol and ammunition from the glove compartment in the car. Monday night Lepinski and Tamminen were taken before the Grants Justice of the Peace and Lepinski was given a five-day jail sentence for carrying a concealed deadly weapon. While Tamminen apparently remained in custody Monday night, Officer Poncho then accepted the information indicating the car belonged to Mrs. Tamminen and Tamminen was allowed to leave Tuesday with the car. Lepinski was taken before

a U. S. Magistrate on Tuesday and charged with the firearms violation. The Dyer Act charge against him came later, after further investigation in Minneapolis concerning the 1967 Pontiac involved.[2]

First, appellant argues that his initial arrest was without probable cause and unlawful. He says the stopping of the vehicle was without suspicion or probable cause and that an unlawful arrest occurred then, and that he was unlawfully restrained when he accompanied Officer Poncho to the station.[3] From these premises appellant contends that fruits of the unlawful arrest were inadmissible under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

█ The authority for such conduct of the State officer is determined by New Mexico law, Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726, insofar as not violative of minimum Federal constitutional standards. Burks v. United States, 287 F.2d 117, 122 (9th Cir.), cert. denied, 369 U.S. 841, 82 S.Ct. 868, 7 L.Ed.2d 846. The New Mexico statutes authorized the officer to demand proof of registration of the vehicle and the display of the driver's license. 64 N.M.S.A., 1953, §§ 64–3–11 and 64–13–49. We believe the stopping of the vehicle and the demands were lawful and necessary in carrying out the New Mexico statutes regulating motor vehicles. See United States v. Croft, 429 F.2d 884, 886 (10th Cir.); Lipton v. United States, 348 F.2d 591, 593 (9th Cir.); Myricks v. United States, 370 F.2d 901 (5th Cir.), cert. denied, 386 U.S. 1015, 87 S.Ct. 1366, 18 L.Ed.2d 474; and D'Argento v. United States, 353 F.2d 327 (9th Cir.), cert. denied, 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675.

2. Lepinski was in an accident in a 1967 Pontiac belonging to Mrs. Tamminen. About that time another 1967 Pontiac similar to her car had been stolen in Minneapolis. While the vehicle identification number on the plate on the fire wall of the car stopped in Grants matched that of her car, the secret number on the frame of the car stopped in Grants, ob-

tained by investigation later in Minneapolis, matched that of the stolen car.

3. Lepinski relies on Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L. Ed.2d 134; Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633; and Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433.

■ While Lepinski produced a driver's license under the name Buss, there was no proper registration or title document furnished covering the vehicle. Tamminen was claiming ownership of the car but gave no verification or registration document. The officer testified he did not know which man might actually be the owner, and since neither man produced registration papers, a reasonable limited detention for investigative purposes was proper. See Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889; United States v. Fallon, 457 F.2d 15 (10th Cir., filed April 3, 1972); and United States v. Self, 410 F.2d 984, 986 (10th Cir.). Moreover, there is no claim by appellant that objection was made by either man to the officer's request that they stay at the roadside for further checking, or go to the station as they did. See United States v. Self, supra at 986. We believe there was no unlawful conduct in these actions by the officer.

The actions of the officer, outlined above, are those discussed by appellant's brief before us. We treat related questions of the lawfulness of subsequent actions by the officer below. See n. 7, infra. For these reasons we feel that no unlawful conduct was shown, and that appellant's contention to the trial court that an unlawful arrest tainted both physical and oral evidence produced is without merit. In particular appellant argues to us the inadmissibility of his confession on Monday, and the pistol and the ammunition, to which we now turn.

■ The objection to the confession to the F.B.I. agent was considered at the suppression hearing, as stated. That record supports the findings of the trial court that appellant's constitutional rights under *Miranda* were explained to him prior to the statement, and that the statement was voluntarily and knowingly made. Even if there was an unlawful arrest, under these circumstances the voluntary statement is admissible. United States v. Davis, 456 F.2d 1192 (10th Cir.); and see United States v. Fallon, supra.

■ The objection to the pistol and ammunition also were dealt with by the trial court's order. The court found that there was no illegal search of the automobile in which the pistol was located. After Tamminen and then Lepinski said there was a gun in the car, Officer Poncho made an affidavit reciting that Lepinski had been driving the vehicle; that he was a convicted felon; and that he admitted there was a .32 caliber pistol in the car.[4] The affidavit and the search warrant obtained are not challenged on appeal, although they were questioned below. We are satisfied there was probable cause for the warrant and that the finding that no unlawful search occurred is supported. The evidence was obtained following the statements by Tamminen, and the Lepinski statement that was found to be voluntary, and through the lawful process of a warrant. Thus, the pistol and ammunition were properly admitted.

Therefore, we conclude that the evidentiary objections discussed above are untenable and that no error occurred in violation of the principles of *Wong Sun*.[5]

Secondly, Lepinski argues that he was not taken before a magistrate without unnecessary delay and that an unlawful working arrangement existed between the State and Federal officers. His position is that throughout there was an

---

4. Appellant's statement admitted that Tamminen had asked if the gun should be taken by them from Minneapolis; that he had said it was a good idea; that the gun was placed in the glove compartment of the 1967 Pontiac which he was driving when arrested in Grants; that he did transport and aid in transporting the weapon, knowing it was in the car; and that he had previously been convicted of burglary and interstate transportation of a stolen motor vehicle.

5. There is the further question of the evidence consisting of the vehicle identification number, but it is raised by appellant under a separate proposition which we treat below.

unlawful working arrangement between the State and Federal officers so that Rule 5(a), Fed.R.Crim.P., was operative. He says that due to the delay in taking him before the Commissioner and the unlawful working arrangement, his statement should have been suppressed.[6]

■ Rule 5(a), F.R.Crim.P., did not apply while Lepinski was in State custody. Hayes v. United States, 419 F.2d 1364, 1368 (10th Cir.), cert. denied, 398 U.S. 941, 90 S.Ct. 1856, 26 L. Ed.2d 276. Moreover, there was no showing that the State custody was used by design to circumvent the Rule. See United States v. Chadwick, 415 F.2d 167, 171 (10th Cir.). Furthermore, we cannot agree that there was proof of an unlawful working arrangement. There was no State arrest performed at the behest of the F.B.I. as in United States v. Broadhead, 413 F.2d 1351 (7th Cir.), cert. denied, 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508. There was no unlawful or prolonged interrogation as in Anderson v. United States, 318 U.S. 350, 63 S. Ct. 599, 87 L.Ed. 829. While it is not developed by the parties, there is some question as to the lawfulness of the extent of the detention of the men, but we feel that no unlawfulness was established.[7] Bare suspicion of a working arrangement will not suffice and we hold that the proof showed no such unlawful collusion. See United States v. Chadwick, supra; and Young v. United States, 344 F.2d 1006 (8th Cir.), cert.

denied, 382 U.S. 867, 86 S.Ct. 138, 15 L. Ed.2d 105.

■ Third, appellant contends that Officer Pancho unlawfully searched the car for the vehicle identification number at the station after the men were in custody. We agree that the facts showed no exigent circumstances justifying a warrantless search of the car at that time. See Coolidge v. New Hampshire, 403 U.S. 443, 462–464, 91 S.Ct. 2022, 29 L.Ed.2d 564, and cases there cited. However, the record shows that the motion to suppress raised no objection that the vehicle identification number was obtained by an unlawful search, and no such objection was made at trial. We thus feel that appellant may not now assert this contention not made at trial or the motion to suppress hearing. The record shows no objection below that inspection for the number was an unlawful search, and does not adequately develop the facts surrounding the inspection and whether there may have been consent, and we should not deal with the contention. United States v. Wenner, 417 F.2d 979 (8th Cir.), cert. denied, 396 U.S. 1047, 90 S.Ct. 700, 24 L.Ed.2d 692; Haynes v. United States, 415 F.2d 347 (5th Cir.); United States v. Berry, 362 F.2d 756 (2d Cir.).

We are satisfied that none of the contentions discussed above, nor related ones which require no further discussion, call for reversal, and the judgment is affirmed.

6. Lepinski relies on Anderson v. United States, 318 U.S. 350, 356, 63 S.Ct. 599, 87 L.Ed. 829, dealing with joint conduct by Federal and State officers, and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479, which enforce an exclusionary rule where an unreasonable delay in taking the accused before a magistrate occurs.

7. The New Mexico statutes provide that on certain conditions one should be released if only a motor vehicle code misdemeanor is charged, but that if the officer has good cause to believe that the person arrested has committed a felony he shall be taken immediately before a magistrate. 64 N.M.S.A., §§ 64–22–7 and 8. The facts developed Saturday afternoon furnished such "good cause," we feel, for detention of the men for such an appearance due to the circumstances indicating a probable stolen vehicle offense in addition to the registration offense charged on Saturday.